817 P.2d 488

**STATE of Arizona, Appellee,**

v.

**Sherman Earl TAYLOR, Appellant.**

**No. CR–91–0126–PR.**

Supreme Court of Arizona,
En Banc.

Sept. 17, 1991.

Grant Woods, Atty. Gen., Paul J. McMurdie, Atty. Gen.'s Office, Chief Counsel, Criminal Appeals Section, Phoenix, for appellee.

Dunscomb & Shepherd by Denice R. Shepherd, Tucson, for appellant.

## OPINION

GORDON, Chief Justice.

Sherman Earl Taylor (defendant) petitioned for review of the court of appeals' memorandum decision affirming his conviction for second degree murder. We granted review to determine: (1) whether the trial court erred by refusing to give a justification instruction pursuant to A.R.S. § 13–411, and (2) whether the trial court erred by precluding evidence of the victim's prior conviction for child abuse. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant, his girlfriend, and their children lived together in his girlfriend's Tucson apartment. The victim was the girlfriend's brother.

On July 28, 1989, the victim entered the apartment, argued with defendant, and told him he had thirty days to get out. Although defendant tried to avoid the fight, the two men pushed and shoved each other and the victim punched defendant. Before he left, the victim told defendant he would be back for him and would "kick his butt." Defendant testified that the victim told him, "I am going to take you down" and "once I take you down I am going to deal with your family." The argument concerned a shooting incident a week earlier in which the police were called. The victim was upset because he thought defendant had "snitched" on him.

The victim returned to the apartment the next day. He entered the apartment, stuck his finger in defendant's face, and began threatening him. After defendant pushed the victim's hand away, the two men began pushing and shoving. The argument went outside and escalated, with the victim spitting in defendant's face and punches being thrown. Witnesses testified that the victim appeared to be the aggressor and was threatening to "take down" defendant and his family.

Eventually, the fighting stopped and the victim said he would be back for defendant.

The victim then went out to his truck, where defendant believed the victim carried a gun, and defendant went into the apartment. The victim was moving toward the apartment when defendant came out with a gun and fired five times. The victim turned and ran when defendant began firing. Three bullets hit the victim, killing him. Two of the three bullets entered the victim's back and travelled diagonally across the body. Defendant admitted that he could not see the victim's hands and did not know whether he had a gun.

Defendant was indicted on one count of first degree murder. Before trial, the State moved to preclude evidence of the victim's child abuse conviction for immersing a child in a bathtub with scalding water. The trial court found that the four-year-old conviction did not "shed much light" on the issue of who the aggressor was, and therefore granted the State's motion. Defendant requested a jury instruction on justification pursuant to A.R.S. § 13–411, but the court refused it. The jury found defendant not guilty of first degree murder, but guilty of second degree murder. The court imposed a mitigated sentence of twelve years. The court of appeals affirmed the conviction and sentence in a memorandum decision. *State v. Taylor*, No. 2 CA–CR–90–0198 (Ct.App. Feb. 28, 1991) (mem.).

## DISCUSSION

I. *Justification Instruction Pursuant To A.R.S. § 13–411*

Defendant defended on the basis of justification and requested that the jury be instructed on A.R.S. § 13–411. Section 13–411 provides in part that:

A. A person is justified in threatening or using both physical force and deadly physical force against another if and to the extent the person reasonably believes that physical force or deadly physical force is immediately necessary to prevent the other's commission of ... manslaughter ..., second or first degree murder ..., or aggravated assault....

The trial court refused to give the instruction.

We recently stated "that the justification defense in § 13–411 applies only when a home, its contents, or its residents are being protected by the use of force against another." *State v. Korzep,* 165 Ariz. 490, 492, 799 P.2d 831, 833 (1990) (citing *State v. Thomason,* 162 Ariz. 363, 366, 783 P.2d 809, 812 (Ct.App.1989)). Relying in part on the broad language in the legislature's declaration of policy that accompanied the addition of subsection C to § 13–411 in 1983, we held "that the justification defense found in § 13–411 applies when one resident of a household uses force against another resident of the same household to prevent the commission of an enumerated crime." *Id.* at 494, 799 P.2d at 835.

Defendant argues that the facts presented at trial support giving a justification instruction pursuant to § 13–411 because he believed the victim was returning to the apartment to commit aggravated assault, first degree murder, or second degree murder upon him or his family. The State argued in the court of appeals that § 13–411 applies "to altercations arising in the home," but does not apply in this case because defendant left the apartment before he began shooting.[1] The court of appeals agreed and concluded that the evidence did not support giving the instruction. *Taylor,* slip op. at 5–6. Defendant argues that he should not have to wait for an intruder "to commit some violent atrocity before taking defensive action" and should not have to allow the intruder "to seek him out of the inner recesses of [his] home to commit a further offense in the presence of [his] children."

We agree with defendant that he should not have to wait until an intruder physically enters the home before taking defensive action. The broad language in the legislative declaration of policy in 1983 supports this conclusion. The legislature expressed its intent that "a person's home ... and the residents therein shall be totally respected and protected in Arizona." Laws 1983, Ch. 255, § 1. It also expressed an intent "to restore the total sanctity of the home in Arizona." *Id.* We believe this intent is furthered by permitting a resident to go outside the home if necessary to prevent the commission of the crimes enumerated in § 13–411. Had the legislature intended § 13–411 to apply only when force is used inside the home, it easily could have said so. *See Korzep,* 165 Ariz. at 494, 799 P.2d at 835.

■ We continue to believe that "the justification defense in § 13–411 applies only when a home, its contents, or its residents are being protected by the use of force against another." *Id.* at 492, 799 P.2d at 833 (citing *Thomason,* 162 Ariz. at 366, 783 P.2d at 812). We also believe, however, that a person should be entitled to protect "a home, its contents, or its residents" from outside as well as from within the home. All that is required for § 13–411 to apply is that a reasonable relationship exist between the criminal acts being prevented and the home, its contents, or its residents. Thus, we hold that the justification defense found in § 13–411 may apply when a resident who is outside the home uses force against another to prevent the commission of an enumerated crime.[2]

■ Because § 13–411 may apply even though defendant was outside the apartment when he shot the victim, we must reverse defendant's conviction. A criminal defendant is entitled to have the jury instructed on the justification defense in § 13–411 "whenever there is the slightest evidence of justification for the defensive

---

1. The State acknowledged receipt of the petition for review, but filed no separate response in this court. It urged us to deny review, arguing that the issues "were adequately addressed and resolved on appeal."

2. We emphasize that we do *not* hold that this justification defense applies any time a defendant claims to be acting to protect the home, its contents, or its residents. Rather, the crimes that the defendant seeks to prevent must be reasonably related to the home, its contents, or its residents. Given the events of the night of the shooting, the events of the preceding night, and defendant's proximity to the apartment at the time he shot the victim, we believe this standard is met in this case.

act." *Id.* at 494, 799 P.2d at 835 (citations omitted). At trial, defendant testified that:

David told me, punk, I am going to kill you. Now I know he had the weapon and I know he is running to his truck to get a weapon so I ran into the house and when I ran into the house, I got my .22 and I—after I got my .22, I run back to the door and when I run back to the door I seen David coming back away from the truck toward the apartment and then run out, run out of the house and as I ran out of the house I started shooting.

Other witnesses also testified that the victim had threatened defendant and his family. We believe this constitutes at least "the slightest evidence of justification," and therefore hold that the trial judge erred by refusing to instruct the jury on § 13–411. This refusal to so instruct the jury is reversible error.

## II. *Admissibility of the Victim's Child Abuse Conviction*

Although our holding above regarding the § 13–411 instruction is sufficient to require a reversal of defendant's conviction, we also address the admissibility of the victim's child abuse conviction because it is likely to be raised on remand. Defendant argues that the victim's prior conviction for child abuse should be admissible to prove the victim's history of aggressive behavior, propensity for violence, disregard for the physical safety of others, and disregard for the law. He also argues that it is relevant to demonstrate his own state of mind because he knew of the conviction and believed the victim to be violent.

■ Arizona courts have long held that a murder defendant who defends on the basis of justification should be permitted to introduce evidence of specific acts of violence by the deceased if the defendant either observed the acts himself or was informed of the acts before the homicide. *See, e.g., State v. Young,* 109 Ariz. 221, 223, 508 P.2d 51, 53 (1973); *State v. Jackson,* 94 Ariz. 117, 121, 382 P.2d 229, 231 (1963); *Mendez v. State,* 27 Ariz. 82, 86, 229 P. 1032, 1033 (1924); *see also State v. Williams,* 141 Ariz. 127, 130, 685 P.2d 764, 767 (Ct.App.1984). The purpose of such evidence is to show that the defendant was justifiably apprehensive of the decedent and knew that the decedent had a violent disposition. *Young,* 109 Ariz. at 223, 508 P.2d at 53; *Jackson,* 94 Ariz. at 121, 382 P.2d at 231.

■ There can be little doubt that the victim's act of immersing a child in scalding water represents an act of violence. *See State v. Arnett,* 119 Ariz. 38, 51, 579 P.2d 542, 555 (1978) (defining "violence" as the "exertion of any physical force so as to injure or abuse" and holding that the appellant's prior conviction for the "lewd and lascivious act" of inserting his finger into a five-year-old girl's vagina, fits within this definition) (citation omitted). Defendant knew of the victim's conviction before he shot him. We believe defendant's knowledge of the prior conviction is relevant[3] to his state of mind at the time of the shooting in two ways: (1) it relates to whether defendant was justifiably apprehensive for his own safety, and (2) it relates to whether defendant was justifiably apprehensive for the safety of the two children in the apartment at the time of the shooting.[4]

Rule 404(b) provides that

---

3. Evidence is relevant if it has *"any tendency to* make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz.R.Evid. 401, 17A A.R.S. (emphasis added). "This standard of relevance is not particularly high." *State v. Oliver,* 158 Ariz. 22, 28, 760 P.2d 1071, 1077 (1988) (citations omitted); *see also Reader v. General Motors Corp.,* 107 Ariz. 149, 155, 483 P.2d 1388, 1394 (1971) ("It is not necessary that such evidence be sufficient to support a finding of an ultimate fact; it is enough if the evidence, if admitted, would render the desired inference

more probable."). *See generally* 1 M. Udall, J. Livermore, P. Escher & G. McIlvain, *Arizona Practice: Law of Evidence* § 81 (3d ed. 1991) [hereinafter Udall & Livermore]. We believe the victim's child abuse conviction meets this minimal standard.

4. Defendant's girlfriend had three children, two of whom were defendant's children. Two of the children were in the apartment at the time of the shooting. The third child had already been taken away to a neighbor's apartment.

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes....

Ariz.R.Evid. 404(b), 17A A.R.S. Because the victim's prior conviction is relevant to defendant's state of mind, it may be admissible under Rule 404(b). *See, e.g., State v. Jeffers,* 135 Ariz. 404, 417, 661 P.2d 1105, 1118 ("The list of 'other purposes' in rule 404(b) ... is not exclusive; if evidence is relevant for any purpose other than that of showing the [person's] criminal propensities, it is admissible even though it refers to his prior bad acts.") (citations omitted), *cert. denied,* 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983).

■ Our determination that the victim's prior conviction is relevant and may be admissible under Rule 404(b), however, does not end our inquiry into whether it should be admitted. Even if the conviction is admissible under Rule 404(b), it "may still be excluded under Rule 403 if the trial judge finds its probative value is substantially outweighed by the danger of unfair prejudice...." *State v. Robles,* 135 Ariz. 92, 95, 659 P.2d 645, 648 (1983); *see State v. Cannon,* 148 Ariz. 72, 75–76, 713 P.2d 273, 276–77 (1985). The Rule 403 balancing test "is important in analyzing any Rule 404(b) evidentiary question." *State v. Moreno,* 153 Ariz. 67, 69, 734 P.2d 609, 611 (Ct.App.1986), *cert. denied,* 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987).

[B]ecause of the risk of improper use, the trial judge has a special obligation to insure that [the] probative value of the evidence for the purpose offered is sufficiently great in the context of the case to warrant running that risk. The discretion of the trial judge under Rule 403 to exclude otherwise relevant evidence because of the risk of prejudice should find its most frequent application in this area.

Udall & Livermore, *supra* note 3, at § 84, pp. 179–80 (footnote omitted).

The problem here is the trial court did not explicitly weigh the prejudice of the victim's prior conviction against its probative value. Neither did the court of appeals. Rather, it "agree[d] with the trial court that the victim's prior conviction, which resulted from immersing a child in scalding water, *was not relevant* to appellant's state of mind and the reasonableness of his belief that the use of deadly force was necessary." *Taylor,* slip op. at 3 (citation omitted) (emphasis added). For the reasons stated above, we believe the trial court erred *if* it found the prior conviction irrelevant.

Unlike the court of appeals, however, we are not sure that the trial court found the prior conviction irrelevant. Rather, the record indicates that the court *may have been* weighing the prejudice against the probative value. When arguing that the prior conviction should not be admitted, the State contended that "it's more prejudicial than anything," and that it "[j]ust inflames the jury." After hearing argument from defense counsel, the court stated that "I am not convinced in my mind that a 4–year–old conviction for child abuse sheds much light on who was the aggressor in the confrontation between [defendant] and [the victim]." Additionally, the court did not "think a child abuse conviction would worry [defendant] very much." Even though the court did not mention Rule 403 or the prejudice side of the Rule 403 analysis, we believe the court's statements, when taken in context with the State's argument, indicate that the trial court *may have been* weighing the prejudice against the probative value.

■ We cannot determine with any degree of certainty, however, whether the trial court excluded the victim's prior conviction because he considered it irrelevant or because he believed the prejudice outweighed the probative value. "A remand with instructions to conduct a Rule 403 determination may be ordered when uncertainty in a trial court's ruling might be removed." *Shows v. M/V Red Eagle,* 695 F.2d 114, 118 (5th Cir.1983).[5] "[A]n explicit

---

5. *Shows* was overruled on other grounds by

*Green v. Bock Laundry Machine Co.,* 490 U.S.

record of the trial proceedings [would] vastly simplif[y] appellate review." *Cannon*, 148 Ariz. at 76, 713 P.2d at 277. We therefore remand this issue and instruct the trial court "to make an on-the-record finding based on specific facts and circumstances" regarding the Rule 403 balancing of prejudice and probative value if the victim's prior conviction is offered at retrial. *See id.* (citation omitted). On remand, the decision to admit or exclude the prior conviction after an explicit Rule 403 balancing will be within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. *See, e.g., State v. Meraz*, 152 Ariz. 588, 589, 734 P.2d 73, 74 (1987); *id.* at 590, 734 P.2d at 75 (Feldman, V.C.J., concurring); *State v. Neal*, 143 Ariz. 93, 101, 692 P.2d 272, 280 (1984) (ruling that the probative value of the murder victim's blood level for cocaine and quaaludes was so slight that it was outweighed by the dangers of prejudice and confusion was within the trial court's sound discretion).

## DISPOSITION

We reverse the conviction and remand this case to the trial court for proceedings consistent with this opinion. We vacate those portions of the court of appeals' memorandum decision addressing whether the trial court should have instructed the jury on A.R.S. § 13–411 and whether the trial court should have admitted evidence regarding the victim's child abuse conviction.

FELDMAN, V.C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.

504, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989). *See Coursey v. Broadhurst*, 888 F.2d 338, 342 n. 4 (5th Cir.1989).