887 P.2d 617

**STATE of Arizona, Appellee,**

v.

**Augustine R. SALAZAR, Appellant.**

**No. 1 CA–CR 92–1586.**

Court of Appeals of Arizona,
Division 1, Department E.

Sept. 6, 1994.

Review Denied Jan. 25, 1995.*

---

* Martone, J., of the Supreme Court, voted to grant the petition for review.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and

Dawn M. Northup, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

## OPINION

FIDEL, Judge.

Defendant was tried by jury and convicted of one count of attempted child molestation. We reverse because the introduction of detailed and inflammatory evidence of prior sexual crimes denied defendant a fair trial.

### I

Defendant was accused of attempting to sexually molest V, his 13 year old niece. V testified that in May of 1991, defendant entered her bedroom while she lay sleeping and awakened her by reaching under her blanket, fondling her leg above the knee, and moving his hand up toward her hip. When V recoiled and told defendant to stop, he persisted, stating, "You know you want it." When she repeated that he must stop, he eventually did so and left the room. Earlier that evening, according to V, she and her brother had been watching TV, and defendant had offered them beer and cigarettes and stared at her with "a smirk on his face."

To prove defendant's criminal intent and emotional propensity for sexual aberration, the state was permitted to call three witnesses who testified that defendant had raped them at times past. Because our decision turns on the inflammatory specificity of their evidence, we describe it in some detail:

1. T testified that in 1970, when she was 12, she was babysitting for defendant's sister's children when defendant arrived, satisfied himself that no adults were home, forced her to the bedroom, raped her, threatened that he had a gun, and then forced her to drink a beer.

2. C testified that in 1973, when she was 19, defendant offered her a ride home from a tavern, but then drove to an isolated spot. When she attempted to escape, defendant beat her, dragged her by the hair back to the car, and drove on to a dirt road near a

warehouse. There, to the sound of barking guard dogs, defendant raped her three times vaginally and once anally; he then started to force her into oral sex but stopped when she began gagging and getting sick. C added that defendant beat her repeatedly with his fists, struck her with a rock, and threatened that he would have to kill her. Eventually, she said, her blouse was so soaked in blood that he made her take it off and gave her his t-shirt. She escaped at a gas station where defendant was buying her a drink.

3. N testified that she encountered defendant in 1988 when she was 14. Sleeping on a couch at a friend's house, she awakened to find defendant looking at her with "a weird smile on his face." Eventually, she and a girlfriend asked him to drive them to their homes. After dropping off the girlfriend, defendant drove N to a different house, took her inside holding her mouth so she couldn't scream, led her to the couch, offered her a beer, then forced her to the bedroom, slapped her to stop her screaming, and raped her. While raping her, defendant said, "[Y]ou know you like it." Then, N testified, defendant dragged her back to the couch and raped her again. When she kept screaming, defendant pulled a sawed-off shotgun from under the couch and aimed it at her head to make her stop. She escaped while defendant was using the restroom.

Before permitting the state to place evidence of these prior assaults before the jury, the trial court required the state to present expert testimony outside the jury's presence to establish that the evidence tended to show defendant's continuing propensity to engage in sexually aberrant behavior. *See State v. Treadaway*, 116 Ariz. 163, 167, 568 P.2d 1061, 1065 (1977) (requiring expert testimony to establish that prior sexual offenses remote in time or different in nature from the offense charged are relevant to show the continuing sexually aberrant propensities of the ac-

cused). To satisfy the *Treadaway* requirement in this case, the state called Robert Emerick, then director of the Phoenix Memorial Hospital Sexuality and Addiction Program, who expressed the opinion that the acts in question did indeed demonstrate defendant's continuing sexually aberrant propensities. Emerick testified only at the "propensity hearing"; the state did not call him to testify at trial.[1]

At the conclusion of the hearing, the trial court found that the evidence in question had cleared the *Treadaway* hurdle and was relevant under rule 404(b), Arizona Rules of Evidence, to establish both defendant's sexually aberrant propensities and his criminal intent. Later the trial court also ruled that the probative value of the evidence outweighed the risk that it would unfairly prejudice defendant's trial. *See* Ariz.R.Evid. 403. On that basis, over defendant's objection, the evidence was admitted.

Defendant did not testify at trial, nor did he present witnesses on his behalf. Found guilty as charged, defendant was sentenced to an aggravated prison term of 15 years. We have jurisdiction over his appeal pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") sections 12–120.21(A)(1) (1992), 13–4031 (1989), and 13–4033(A)(1) (Supp.1993).

## II

We conclude that the trial court erred under Rule 403, Arizona Rules of Evidence, by the wholesale admission of evidence of defendant's prior acts and by failing to recognize that the probative value of the evidence, in its unrestricted form, was vastly outweighed by its potential for unfair prejudice.[2] Before discussing the Rule 403 balance in this case, we review the determination that the evidence was admissible under Rule 404(b).

---

1. This court has recently held that Emerick, who is neither a physician nor a psychologist, is unqualified to provide expert medical testimony on the issue of aberrant sexual propensity. *State v. Varela*, 178 Ariz. 319, 873 P.2d 657, 660–61 (App.1993). Defendant, however, did not object to Emerick's testimony on foundational grounds and concedes that the foundational issue was not preserved for appeal.

2. Defendant raised a second issue on appeal: Whether the trial court erred in failing to grant a mistrial after a witness testified that defendant had been in jail. Because we reverse on grounds that the prior bad acts were improperly admitted, we do not reach the second issue.

## A

Rule 404(b) provides:

**Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The trial court concluded in this case that the challenged evidence was probative both of defendant's intent and sexual tendencies.

■ When evidence of other crimes or wrongful acts is admitted to prove intent, it is admitted for a purpose other than to prove character. Ariz.R.Evid. 404(b). When evidence of other crimes or wrongful acts is admitted to prove sexually aberrant propensity, however, it is admitted precisely to prove character and to show action in conformity therewith. *See, e.g.,* M. Udall, J. Livermore, P. Escher, G. McIlvain, *Arizona Practice: Law of Evidence* § 84 at 186 (3d ed. 1991) [hereinafter Udall]. As Wigmore stated:

> [A]ny distinction (occasionally attempted) between the sexual tendencies of an accused, on the one hand, and his disposition or character, on the other, is spurious. Persistent and long-standing mental characteristics are paradigmatic examples of what we mean when we speak of "character" or "disposition."

1A Wigmore, *Evidence* § 62.2 at 1345 (Tillers rev. 1983).

Sexual propensity evidence is, thus, a direct exception to Rule 404(b) and has been subject to much criticism. In *McFarlin*, our supreme court noted that the exception had been "extended to questionable lengths" and attempted to narrowly define it for future cases. *State v. McFarlin*, 110 Ariz. 225, 228, 517 P.2d 87, 90 (1973). The court stated:

> In those instances in which the offense charged involves the element of abnormal sex acts, ... there is sufficient basis to accept proof *of similar acts near in time to the offense charged* as evidence of the accused's propensity to commit such perverted acts.

*Id.* (emphasis added).

Four years later, in *Treadaway*, the supreme court attempted to impose further constraints. Commenting on the remoteness of sexual acts three years prior to the crime, the court instituted the requirement of "reliable expert testimony" to establish that a prior sexual act remote in time or different in nature "tends to show a continuing emotional propensity to commit the act charged." 116 Ariz. at 167, 568 P.2d at 1065.

It is clear from the text of *Treadaway* that the court intended the requirement of expert testimony as a substantial hurdle to establishing the probative value of evidence of prior sexual crimes. But it has not worked out that way. Here, the state's expert described long-past acts of rape, violence, and brutality as probative of defendant's present emotional propensity to commit a molesting touching of his niece. Asked by the trial court what it would take for him to find an act of sexually abhorrent behavior too distant to be probative of continuing emotional propensity, the state's expert responded:

> I think it would take literature that indicates some clinical experience that would suggest there is a specific period of time at which point we can say intervention and supervision has resolved the prior referral of sexual violence.
>
> At this point in time the literature is pretty clear that 10 to 15 years is not an adequate period of time to come to that conclusion.

The state's expert also disclosed that during seven years of service as a propensity expert in Arizona courts, he had testified more than thirty times and had found prior crimes probative of propensity in each case. Although we have recently held that this particular witness lacks the medical or psychological training necessary to qualify to give such testimony,[3] similar testimony is readily available from other witnesses. What the supreme court intended as a substantial hurdle

---

**3.** *See supra* note 1.

at the time of *Treadaway* has dwindled to a speed bump over time.

By meeting the requirements of *Treadaway*, the state merely establishes that its evidence has some probative value. It does not qualify the evidence as *admissible* merely to establish that prior sexually aberrant acts are probative of present sexual propensity. Likewise, it does not satisfy the requirements of admission to establish that such acts are probative of intent, motive, opportunity, or any of the other purposes set forth in Rule 404(b). A court has made only a threshold determination when it concludes under *Treadaway* and Rule 404(b) that evidence of such acts has some probative value. The court must then balance the probative value of the evidence against its potential for unfair prejudice, confusion, or waste of time. Ariz.R.Evid. 403;[4] *State v. Stuard*, 176 Ariz. 589, 599, 863 P.2d 881, 891 (1993).

### B

Trial courts have broad discretion in balancing probative value against prejudice, and we will not reverse unless error is clear. *State v. Taylor*, 169 Ariz. 121, 126, 817 P.2d 488, 493 (1991). However, there are considerations unique to the balance of probative value and prejudice when the trial court considers admission of prior bad acts.

We have stated that, ordinarily, it "serves the spirit" of Rule 403 " 'to view both probative force and prejudice most favorably towards the proponent' because 'the thrust of the . . . rules favors admissibility.' " *State v. Castro*, 163 Ariz. 465, 473–74, 788 P.2d 1216, 1224–25 (App.1989) (quoting 1 J. Weinstein and M. Berger, *Weinstein's Evidence* § 403[03] at 403–51 (1989) [hereinafter Weinstein] ).

When the evidence concerns prior bad acts, however, the rules have a different thrust, and the suppositional balance no longer tilts toward admission. As our supreme court stated in *Taylor:*

The Rule 403 balancing test "is important in analyzing any Rule 404(b) evidentiary question." (citations omitted).

> [B]ecause of the risk of improper use, the trial judge has *a special obligation* to insure that [the] probative value of the evidence for the purpose offered is sufficiently great in the context of the case to warrant running that risk. *The discretion of the trial judge under Rule 403 to exclude otherwise relevant evidence because of the risk of prejudice should find its most frequent application in this area.*

169 Ariz. at 125, 817 P.2d at 492 (quoting Udall, *supra* at § 84, pp. 179–180 (emphasis added)).

Judge Weinstein, whom we cited in *Castro* for the proposition that probative force and prejudice should normally be viewed most favorably toward admission, strikes a similarly contrary note when it comes to evidence of prior bad acts:

> The legislative history of Rule 404 suggests that the policy of protecting the accused should be embraced in good faith by prosecutor and judge. Accordingly, *the onus of showing that prejudice is overbalanced by need and good faith should rest on the Government. This may call for prosecutorial restraint.* More than one court has expressed concern "over the government's readiness to jeopardize a conviction by use of other crimes evidence when the question of admissibility . . . is a close one."

Weinstein *supra* § 404[18] at 404–123 to –124 (quoting *United States v. Williams*, 596 F.2d 44, 51 (2d Cir.1979) (emphasis added)).

What Judge Weinstein calls "the onus of showing that prejudice is over-balanced by need" is not an all-or-nothing proposition. *See id.* Rather, it is an incremental inquiry that may be divided into three parts. One question is whether the probative value of the evidence is sufficient that it should be admitted in some form. A second question is what restrictions to place in jury instructions

---

4. Rule 403 provides:
   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

on the usage of the evidence. But a third, and frequently overlooked, question is whether the evidence can be narrowed or limited to protect both parties by minimizing its potential for unfair prejudice while preserving its probative value. *See id.* at 404–122 (commending detailed analysis by the trial judge to determine whether "some compromise or limitation may protect both parties").

Arizona courts have recognized in other contexts the value of eliminating irrelevant or inflammatory detail and limiting evidence to its probative core. *See State v. Oliver,* 158 Ariz. 22, 29, 760 P.2d 1071, 1078 (1988) (approving trial court's permission of narrow inquiry, through pre-approved leading questions, to establish victim's independent knowledge of ejaculation from experiences with someone other than accused); *Castro,* 163 Ariz. at 474, 788 P.2d at 1225 (remanding for "balanced exclusionary application of Rule 403" to permit admission of probative evidence excluding prejudicial details).

Other reviewing courts have reversed convictions where trial courts admitted unnecessarily inflammatory detail or have affirmed because trial courts eliminated such detail and confined prior-bad-acts evidence within probative bounds. In *United States v. Harvey,* 991 F.2d 981 (2d Cir.1993), for example, the court reversed a conviction for knowing receipt of child pornography because the trial court permitted the prosecutor to elicit detailed evidence that defendant possessed other videotapes depicting people engaged in bestiality, sadomasochism, and acts involving human waste. The court stated:

> We have little difficulty in concluding that the likely effect of this evidence was to create disgust and antagonism toward [defendant], and resulted in overwhelming prejudice against him.

*Id.* at 996. In *United States v. Ostrowsky,* 501 F.2d 318, 323 (7th Cir.1974), the court recognized the probative value of evidence of the murder of an alleged associate in defendant's "chop shop" ring but reversed the conviction because the trial court permitted the prosecutor to "transgress[ ] the bounds of necessity" by "introducing gruesome details of the murder." *See also, United States v. Dansker,* 537 F.2d 40, 58 (3d Cir.1976) (approving trial court's restriction of evidence of prior crimes to eliminate unnecessary detail); *Illinois v. Diaz,* 78 Ill.App.3d 277, 33 Ill.Dec. 815, 397 N.E.2d 148, 149–50 (Ct.1979) (recognizing that minimal evidence of subsequent crime would have been probative regarding defendant's arrest and recovery of stolen gun but reversing conviction because of unnecessary and inflammatory evidence that in subsequent crime, defendant's accomplice placed gun to pregnant victim's stomach and threatened that her baby would be "born with a hole in its head").

◼ We come then to our finding that the trial court abused its discretion in admitting the evidence in this case. First, we find that the trial court erred by failing to exclude C's evidence in its entirety. From the barking dogs to the bloody shirt to the beating with a rock to the pulling by the hair to the specification of vaginal, anal, and attempted oral penetration, the prosecution's conspicuous purpose with this evidence was to luxuriate in inflammatory detail and create overwhelming prejudice against defendant. Eliminating such detail, what remains is the rape of a nineteen-year old woman eighteen years before the charged offense under vastly dissimilar circumstances. This evidence had no place in this trial.

◼ In contrast, we do not find that the evidence of T and N was wholly inadmissible. Rather we find that the trial court erred in considering admission of their testimony as an all-or-nothing proposition without considering appropriate restraints.[5] In N's case, for example, assuming that the episode was probative in other respects, it was wholly unnecessary for the jury to hear that defendant slapped the victim, raped her twice, and silenced her by holding a sawed-off shotgun to her head.

It is not our purpose now to devise precise limits on the testimony of these witnesses on remand. That is necessarily dependent on the probative purposes outlined by the state. If the state chooses to recall the witnesses

---

5. Although T's rape occurred more than twenty years before the crime, it appears to have been similar in such matters as setting, age of victim, and mode of operation. Thus we do not fore-close the prospect of her testifying on remand, assuming proper restraints and a proper evidentiary foundation.

and to reassert their evidence as probative of propensity, it must face another *Treadaway* hearing with a new, qualified, expert. *Varela*, 178 Ariz. at 322–24, 873 P.2d at 660–61. Or the state may attempt again to use the evidence on a point other than character, such as intent, within the scope of Rule 404(b). Whatever the probative purpose, if probative value is established, the trial court must then undertake the incremental three-step inquiry we have outlined under Rule 403, with particular attention to the elimination of extraneous and unduly prejudicial detail.

### III

Our supreme court recognized seventeen years ago in *Treadaway* that evidence of prior sexually aberrant acts can be so highly prejudicial as to be "nearly dispositive, making the guilty verdict almost a formality." 116 Ariz. at 167, 568 P.2d at 1065. This was such a case. For the reasons set forth above, we reverse the conviction and sentence of defendant and remand for a new trial.

JACOBSON, P.J., and NOYES, J., concur.