914 P.2d 1314

**The STATE of Arizona, Appellee,**

v.

**Michelle Patricia FERNANE, Appellant.**

**No. 2 CA–CR 94–0652.**

Court of Appeals of Arizona,
Division 2, Department A.

Oct. 31, 1995.

As Corrected Nov. 1, 1995.

Review Denied April 23, 1996.

Grant Woods, Attorney General by Paul J. McMurdie and Randall M. Howe, Phoenix, for Appellee.

Isabel G. Garcia, Pima County Legal Defender by Robb Holmes, Tucson, for Appellant.

*OPINION*

PELANDER, Judge.

FACTS AND PROCEDURAL HISTORY

Appellant and her co-defendant, Joseph Stern, were convicted following a joint jury trial of two counts of child abuse and one count of first degree felony murder in connection with the death of appellant's two-year-old daughter, Katherine Rose Fernane. Appellant was sentenced to mitigated terms of twelve years and twenty-three years on the child abuse counts, and to life imprisonment without possibility of release for thirty-five years on the murder count, the sentences to run concurrently. She appeals from her convictions and sentences, contending that the trial court erred in (1) failing to sever her trial from Stern's; (2) failing to exclude or limit evidence of appellant's prior bad acts; and (3) denying her motion for judgment of acquittal based on insufficient evidence to support the verdict. We reject the third but agree with the first two contentions, and therefore reverse and remand for a new trial.

Appellant met Stern in July 1993. In mid-October, 1993, she and Katherine moved in with Stern and three of his children, Joshua (16), Jeremy (5) and Jackie (4). During the following weeks, Stern abused Katherine to some extent, mostly outside appellant's presence. Joshua testified that on one occasion within a week or so before Katherine's death, while appellant was out, Stern knocked Katherine unconscious by tossing her against a

chair. Stern was able to revive her, and the incident never was mentioned to appellant.

On November 14, 1993, between 9:30 and 10:00 a.m., appellant and Joshua went to the grocery store, leaving Katherine and the other children with Stern. When they returned from the store approximately twenty minutes later, they found Katherine lying unconscious on the floor, with Stern giving her mouth-to-mouth resuscitation. When Joshua suggested that they take Katherine to the hospital, Stern replied "No, we'll all go down for this," and appellant responded "All right."

Appellant and Joshua eventually took Katherine to the hospital an hour or two later, arriving there sometime between 11:30 a.m. and 12:08 p.m. A brain scan indicated swelling in Katherine's brain and diffuse brain injury, and she died on November 15, 1993. An autopsy revealed that Katherine died of severe head injury caused by blunt force trauma, which the coroner concluded was non-accidental.

## DISCUSSION

### A. Sufficiency of the Evidence

■ Appellant claims that the trial court should have directed a verdict of acquittal because there was insufficient evidence to support the convictions. We disagree. A judgment of acquittal should be granted only where there is no substantial evidence to warrant conviction. Ariz.R.Crim.P. 20(a), 17 A.R.S.; State v. Mathers, 165 Ariz. 64, 66, 796 P.2d 866, 868 (1990). Substantial evidence is that which reasonable people would accept as adequate to support a finding of guilt beyond a reasonable doubt. State v. Engram, 171 Ariz. 363, 367, 831 P.2d 362, 366 (App.1991). We will find reversible error based on insufficient evidence only where there is a complete absence of probative facts to support a conviction. State v. Scott, 113 Ariz. 423, 424–25, 555 P.2d 1117, 1118–19 (1976). That is not the case here.

■ The child abuse counts against appellant charged her with causing or permitting injury to Katherine by leaving her in Stern's care and with delay in seeking medical treatment for Katherine on November 14, 1993. To prove appellant guilty of child abuse as charged in the first count, the state had to prove that, under circumstances likely to cause death or serious physical injury, appellant intentionally or knowingly placed a child in a situation where the child's health or safety was endangered. A.R.S. § 13–3623(B). There was sufficient evidence to show that appellant knew Katherine would be in danger if left with Stern. Appellant told Katherine's father that she did not trust Stern, and that she knew that Katherine was afraid of Stern. Appellant was present for some of Stern's abuse of Katherine. In appellant's presence, Katherine would scream, "No Joe, no Joe" when she saw Stern coming. Katherine would scream even when appellant drove into the driveway of Stern's trailer. There was sufficient evidence from which the jury could conclude that appellant intentionally or knowingly put Katherine in danger by leaving her with Stern.

■ There also was sufficient evidence to support the conviction on the second charge, that appellant committed child abuse by intentionally or knowingly failing to seek medical treatment for Katherine. On November 14, appellant observed Katherine lying unconscious on the floor, knew that she needed to be taken to a hospital, but delayed doing so. Although there was some conflict in the evidence as to the time lapse, there was evidence indicating that at least an hour passed after appellant returned from the grocery store before Katherine was taken to the hospital. When Joshua initially urged Stern to take Katherine to the hospital, Stern refused and appellant agreed.

Appellant also contends that the evidence was insufficient to convict on the charge of failure to seek medical care because such care would have been futile by the time she returned from the store and found Katherine unconscious on the floor. Again, although there was a conflict in the evidence, there was testimony that Katherine would have had a better chance of survival if she had been brought to the hospital sooner. We conclude that sufficient evidence was presented to support the jury's verdict, and the trial court did not err in denying appellant's motion for judgment of acquittal.

## B. *Prior Acts/Severance Issues*

Prior to trial, appellant moved to sever her trial from Stern's, alleging that their defenses would be mutually antagonistic and that evidence of Stern's prior acts and Stern's use of appellant's prior acts in his defense would unduly prejudice her case. The court denied the motion and several renewals of that motion during and after trial. The trial court also denied appellant's motion to exclude evidence of prior, uncharged misconduct. Consequently, over appellant's objection the trial court admitted evidence relating to prior abuse of two of appellant's other children, Joanne and Tabitha, fifteen years before Katherine's death.

When appellant was fifteen-years-old she gave birth to her first child, Joanne, in 1977. The father, James Ellis, abused Joanne, who was removed from the home by Child Protective Services (CPS) and later put up for adoption. At age sixteen, after marrying Ellis, appellant gave birth to their second child, Tabitha. Tabitha died at the age of three months as a result of pneumonia, a complication secondary to child abuse. Ellis was prosecuted, convicted and imprisoned for Tabitha's death. Appellant testified against Ellis and was not charged in connection with Tabitha's abuse or death.

During the trial in this case, the state introduced portions of appellant's recorded statement, given several days after Katherine's death, clearly admitting her knowledge of Ellis' abuse of Joanne and Tabitha and her delay in seeking medical treatment for those children. The state also called appellant's mother, who testified about appellant's marriage to Ellis, the abuse and later removal of Joanne from appellant's care, and the severe beating and many broken bones sustained by Tabitha. In addition, over appellant's objection, Stern called the pathologist who performed the 1979 autopsy on Tabitha. He described in graphic detail the physical evidence of abuse, including his findings of approximately thirty fractures, head bruises and brain injury sustained by Tabitha. The trial court admitted all such evidence and instructed the jury that "the testimony of other incidents was admitted for a limited purpose" and should be considered only in "helping decide proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident of the defendant if you find that the defendant committed this act."

Appellant contends that the trial court abused its discretion in admitting this evidence, without limitation, because it was irrelevant and unfairly prejudicial. The state contends that the prior incidents of abuse were relevant to establish that appellant "intentionally or knowingly permitted Katherine to be injured by leaving her in Stern's care," because appellant "knew the characteristics of an abusive person from Jim Ellis," and knew or should have known that Katherine was being abused. The state also contends that appellant knew that immediate medical treatment was necessary to save Katherine's life because appellant had "seen Tabitha die from Ellis' beatings." In addition, the state asserts that appellant's prior involvement with CPS and Ellis' conviction for abuse gave appellant a motive to delay seeking medical treatment for Katherine, because appellant knew that she and/or Stern could be criminally charged for Katherine's injuries and that Katherine might be taken from her.

All relevant evidence is admissible unless prohibited by law. Ariz.R.Evid. 402, 17A A.R.S. Evidence of other wrongs or acts is not admissible to show character or criminal propensity. Ariz.R.Evid. 404(b). "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* An assertion that a prior act is too different or too remote in time from the charged offense goes "to the weight of the evidence, not whether the evidence is relevant and admissible." *State v. Hinchey*, 165 Ariz. 432, 435–36, 799 P.2d 352, 355–56 (1990), *cert. denied*, 499 U.S. 963, 111 S.Ct. 1589, 113 L.Ed.2d 653 (1991). A trial court's ruling concerning admissibility of evidence should not be disturbed absent an abuse of discretion. *State v. Kiper*, 181 Ariz. 62, 65, 887 P.2d 592, 595 (App.1994).

The prior acts evidence arguably was relevant to establish material facts in issue: that appellant knew what child abuse looked like,

knew that injured children need medical care, knew the consequences to the abuser and was motivated to delay treatment as a result. The fifteen-year gap between the prior acts and the current offenses does not automatically preclude admissibility of such evidence. *Hinchey,* 165 Ariz. at 435–36, 799 P.2d at 355–56.

■ Even if evidence is relevant, however, it still may be excluded under Ariz. R.Evid. 403, 17A A.R.S., if "its probative value is substantially outweighed by the danger of unfair prejudice." *See State v. Schurz,* 176 Ariz. 46, 52, 859 P.2d 156, 162, *cert. denied,* 510 U.S. 1026, 114 S.Ct. 640, 126 L.Ed.2d 598 (1993) ("Unfair prejudice 'means an undue tendency to suggest decision on an improper basis,' Fed.R.Evid. 403, Advisory Committee Note, such as emotion, sympathy or horror."). "Rule 403 weighing is best left to the trial court and, absent an abuse of discretion, will not be disturbed on appeal." *State v. Spencer,* 176 Ariz. 36, 41, 859 P.2d 146, 151 (1993), *cert. denied,* 510 U.S. 1050, 114 S.Ct. 705, 126 L.Ed.2d 671 (1994). Normally the probative force and prejudicial effect of evidence is viewed favorably toward the proponent of the evidence. *State v. Castro,* 163 Ariz. 465, 473, 788 P.2d 1216, 1224 (App.1989). "When the evidence concerns prior bad acts, however, the rules have a different thrust, and the suppositional balance no longer tilts towards admission." *State v. Salazar,* 181 Ariz. 87, 91, 887 P.2d 617, 621 (App.1994).

■ In *Salazar,* a case involving a charge of attempted child molestation, victims of prior sexual assaults by the defendant testified about those offenses in great detail. Division One of this court held that the trial court "erred in considering admission of their testimony as an all-or-nothing proposition without considering appropriate restraints." *Id.* at 92, 887 P.2d at 622. For example, the court found that it was unnecessary for the jury to hear that the defendant slapped one of the witnesses, raped her twice and held a shotgun to her head. *Salazar* suggests a three-part inquiry for determining whether the probative value of the evidence exceeds its prejudicial effect: (1) is the probative value of the evidence sufficient that it should be admitted in some form; (2) what restrictions should be placed in jury instructions on the usage of the evidence; and (3) can the evidence be narrowed or limited to reduce its potential for unfair prejudice while preserving its probative value? *Id.* at 91–92, 887 P.2d at 621–22. The court in *Salazar* remanded the case for a new trial, with a preliminary hearing to be conducted by the trial court to examine the prior bad acts evidence in light of the three-step inquiry, "with particular attention to the elimination of extraneous and unduly prejudicial detail." *Id.* at 93, 887 P.2d at 623.[1]

■ It is the third prong of the *Salazar* inquiry that we believe was overlooked in this case. The state admitted that *Salazar* "sets out some pretty clear guidelines for how much detail one can get into," and that "given the fact that Tabitha died, 24 broken bones is not particularly probative of anything." The state also noted that "[w]hether or not [Stern's counsel] wants to get into the actual details ... I think Your Honor is in a position to control that based upon restraints and set up by State versus Salazar." Although the trial court implicitly found the prior acts evidence probative, there is no indication that the court considered whether the evidence could be narrowed to avoid undue prejudice; nor was the proffered evi-

---

1. We find no merit in the state's contention that *Salazar* "does not apply to this case" because "its holding is necessarily limited to [the] area [of sexual propensity evidence]." The court in *Salazar* did not so limit its holding or discussion relating to the balancing of probative value and prejudicial effect under Ariz.R.Evid. 403 vis-a-vis the admission of prior bad acts evidence under Ariz.R.Evid. 404(b). In fact, the court noted that if the state attempted on remand "to use the evidence on a point other than character, such as intent, within the scope of Rule 404(b)," and if probative value were established, "the trial court must then undertake the incremental three-step inquiry we have outlined under Rule 403, with particular attention to the elimination of extraneous and unduly prejudiced detail." *Salazar,* 181 Ariz. at 93, 887 P.2d at 623. Similarly, for purposes of the analysis suggested in *Salazar,* we see no good reason for differentiating between sexual propensity evidence and the type of prior child abuse evidence involved in this case.

dence restricted in any fashion.[2]

In our view, the detailed evidence about Tabitha's injuries, including the testimony of the pathologist who performed the autopsy on Tabitha in 1979, was marginally relevant and highly prejudicial. That is also true with respect to the testimony of appellant's mother that Tabitha suffered "[s]evere, severe beatings, many broken bones and died of pneumonia," and that Joanne had marks about her face and head. Such detail was unnecessary to establish that appellant had knowledge or motive, and could have served only to inflame the jury. In addition to being highly prejudicial and inflammatory, such evidence was duplicative. A portion of appellant's recorded statement, wherein she discussed the beatings of Joanne and Tabitha extensively, was read into evidence. Appellant admitted that she had lied when she sought help for Joanne, she saw Ellis beat Tabitha and told nobody, she did not seek medical care for Tabitha, and she knew "now" how important it was to take a baby to the doctor. That evidence was sufficient to establish appellant's knowledge and motive. Under the circumstances of this joint trial, the trial court abused its discretion in admitting the other highly prejudicial evidence relating to the abuse and injuries sustained by Joanne and Tabitha.[3]

This error was compounded by the trial court's denial of appellant's motion to sever her trial from Stern's. Although Stern's defense was based largely on the state's failure to prove its case against him beyond a reasonable doubt, he also contended that appellant, not he, was responsible for Katherine's death. In support of the latter contention, Stern used the prior bad act evidence to

suggest that appellant, based on her background with Joanne and Tabitha, must be guilty of Katherine's abuse and death. For example, Stern's counsel argued to the jury that "for better or worse, this case starts back in 1978, with Joanne Ellis, then in '79 with Tabitha Ellis." Referring to the fact that Joanne had serious head injuries and was taken away from appellant, and that Tabitha had serious head injuries plus "27 to 34 broken bones," Stern's counsel also argued that appellant "is extraordinarily neglectful of her children" and was the "common denominator" between the abuse of Joanne and Tabitha in the 1970's and the abuse and death of Katherine in 1993.

■■■■■ The trial court has the continuing duty at all stages of trial to grant a severance if prejudice appears. *State v. Lawson,* 144 Ariz. 547, 555, 698 P.2d 1266, 1274 (1985). "The trial court's decision to grant or deny a motion to sever is within its sound discretion and will be reversed only if that discretion has been abused." *State v. Superior Court (Ryberg),* 173 Ariz. 447, 449, 844 P.2d 614, 616 (App.1992). In light of Stern's alternative defense that appellant must be guilty based on her prior history with Joanne and Tabitha, and Stern's use of the prior bad acts evidence to establish not only appellant's knowledge and motive but also her propensity to abuse her children, we conclude that the trial court abused its discretion in refusing to sever appellant's trial from Stern's. Even assuming *arguendo* that the defenses presented by appellant and Stern were not so antagonistic as to be mutually exclusive, *State v. Kinkade,* 140 Ariz. 91, 93–94, 680 P.2d 801, 803–04 (1984), severance may be

**2.** "The Rule 403 balancing test 'is important in analyzing any Rule 404(b) evidentiary question.'" *State v. Taylor,* 169 Ariz. 121, 125, 817 P.2d 488, 492 (1991) (quoting *State v. Moreno,* 153 Ariz. 67, 69, 734 P.2d 609, 611 (App.1986), *cert. denied,* 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987)). In conducting that test, "'an on-the-record finding based on specific facts and circumstances' regarding the Rule 403 balancing of prejudice and probative value" is strongly recommended, if not required. *Id.* at 126, 817 P.2d at 493 (quoting *State v. Cannon,* 148 Ariz. 72, 76, 713 P.2d 273, 277 (1985)). The trial court made no such finding here and, as far as we can tell, "did not explicitly weigh the

prejudice of [the prior bad acts evidence] against its probative value." *Id.* at 125, 817 P.2d at 492.

**3.** "[I]n light of the totality of the trial evidence," and considering "the fact-specific nature of the inquiry," we cannot say beyond a reasonable doubt that the erroneous admission of all of the prior bad acts evidence against appellant (particularly as it was utilized and argued by Stern) was harmless or "'had no influence on the jury's judgment.'" *State v. Wood,* 180 Ariz. 53, 63, 881 P.2d 1158, 1168 (1994) (quoting *State v. Bible,* 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993)), *cert. denied,* 115 S.Ct. 2588 (1995). The state does not contend otherwise.

warranted where "a defendant may be prejudiced by the actual conduct of his or her co-defendant's defense." *State v. Cruz,* 137 Ariz. 541, 545, 672 P.2d 470, 474 (1983).[4] Such was the case here. The trial court's limiting instructions advising the jury as to the proper use of the prior bad acts evidence and to "decide separately whether each of the two defendants is guilty or not guilty" were insufficient to alleviate the prejudicial effect.

## CONCLUSION

Under the circumstances of this case, the trial court erred in failing to narrow the scope of the prior bad acts evidence against appellant so as to avoid undue prejudice, and in failing to sever appellant's trial from Stern's. We reverse appellant's convictions and sentences and remand for a new trial.

LIVERMORE, P.J., and FERNANDEZ, J., concur.

---

**4.** We reject the state's contention that *Cruz* "is no longer good law" after *Zafiro* [*v. United States,* 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)]. The Supreme Court in *Zafiro* interpreted mutually antagonistic defenses in light of Rule 14 of the Federal Rules of Criminal Procedure and stated that "[m]utually antagonistic defenses are not prejudicial *per se,*" but that "[t]he risk of prejudice will vary with the facts in each case." 506 U.S. at 539, 113 S.Ct. at 938, 122 L.Ed.2d at 325. Moreover, our supreme court continues to rely upon the reasoning in *Cruz. See State v. Grannis,* 183 Ariz. 52, 58–59, 900 P.2d 1, 7–8 (1995).