NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MICHAEL RONALD WYFFELS, *Appellant.*

No. 1 CA-CR 24-0029

FILED 11-07-2024

Appeal from the Superior Court in Coconino County
No. S0300CR201901295
The Honorable Joshua Steinlage, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Coconino County Public Defender's Office, Flagstaff
By Brad Bransky
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1   Michael Ronald Wyffels appeals from his convictions and sentences for first-degree murder, kidnapping, theft of means of transportation, and armed robbery. Wyffels argues that the superior court erred by ruling that evidence of his release from prison was admissible under Arizona Rules of Evidence (Rules) 404(b) and 403, and by the prosecutor vouching for the evidence in closing arguments. We affirm.

## BACKGROUND

¶2   On the afternoon of August 16, 2019, Wyffels was released from prison and dropped off at a Phoenix-area transit center with no money or car. He previously told his mother, Carly Brooks,[1] that he planned to stop at her Sun City house and then travel to Oregon. Knowing she would be out of town, Brooks left Wyffels a note on her patio indicating that his belongings were in the unlocked carport.

¶3   Wyffels knew Brooks' elderly next-door neighbor, Arnold Adams. Adams did not typically drive his car more than a few miles from home and never at night. But in the early morning hours of August 17, 2019, Adams was recorded withdrawing $300 from an ATM in Prescott. He was accompanied by Wyffels, who could be seen in the video wearing his prison-discharge clothes. Wyffels was then recorded using Adams' bank card to buy gas for Adams' car at a Prescott service station.

¶4   Later that day, Adams' body was discovered on an incline off State Route 89A. Branches and a rock had been placed over his body, and his back had a large abrasion consistent with being dragged. An autopsy revealed that he died from multiple strikes to the head with an elongated object. The medical examiner noted defensive wounds on Adams' hands and ruled that the death was a homicide.

---

[1]   We use pseudonyms for witnesses and the victim.

¶5        Meanwhile, someone continued to use Adams' bank card in Utah, Idaho, and finally, Oregon. On August 19, two days after Adams' body was discovered, Wyffels arrived at his friend Mark Mender's house in Oregon. Wyffels told Mender that someone had given him money and loaned him a car for doing yardwork. He explained he was supposed to return by the end of the year to complete the yardwork. Mender also saw a note from Adams to that effect.

¶6        Wyffels stayed with Mender for more than a week. During that time, Wyffels alluded to Adams' death several times. Early on, Wyffels asked Mender if he would push someone over a cliff if they wanted to die. Later, Wyffels referred to a person disappearing, a person slipping or falling, a person calling his name from a distance, and a body that would never be found. Wyffels then added details, stating that he saw the person when he looked over the edge. The person was bloody and asked not to be left like that, the person gave him a wallet and said to have fun, and he then finished the person off. Wyffels then speculated that people would try to pin the death on him, and he would not be taken alive.

¶7        When Mender informed Wyffels that police were looking for him, Wyffels moved Adams' car to a nearby shopping center and made plans to relocate. Police arrived and arrested him before he could escape. Police searched Mender's home and found Adams' car keys and a pair of shoes purchased with Adams' bank card. Forensic analyses of the socks Adams was wearing when he died, and a cigarette butt found in Adams' car contained Wyffels' DNA material.

¶8        Wyffels was indicted for kidnapping, theft of means of transportation, armed robbery, and first-degree murder, charged in the alternative as premeditated or felony murder. Before trial, the State moved under Rule 404(b) to admit evidence of Wyffels' prison release, as sanitized and accompanied by a limiting jury instruction. The court granted the motion over Wyffels' objection, holding that the evidence was relevant for proper purposes under Rule 404(b) and that its probative value outweighed any prejudicial effect under Rule 403.

¶9        Over the course of two trials (because of a partially hung jury), Wyffels was convicted on all counts, including both alternative forms of first-degree murder. In both trials, the court addressed the prison-release evidence by informing the jury that Wyffels had been "discharged from a Phoenix metropolitan area location" where he had "resided" and "was not permitted to leave," and upon his discharge was transported by bus to a transit center with "no money and no vehicle," clad in "white shoes, jeans,

and a light blue shirt." The court instructed the jury that it was to consider this evidence "only for the limited purpose of considering defendant's motive, intent, plan, opportunity, or identity," and "not for any other purpose." The court reiterated the limitation in the final instructions.

**¶10** The court entered judgment on the verdicts and imposed concurrent prison sentences of life for the murder, 25 years for the kidnapping, 18 years for the armed robbery, and 18 years for the theft of means of transportation. Wyffels appealed.

## DISCUSSION

### I. Admission of Prison-Release Evidence

**¶11** Wyffels argues that the superior court erred by admitting evidence of his release from prison. We disagree.

**¶12** We review the admission of other-acts evidence for abuse of discretion. *State v. Hulsey*, 243 Ariz. 367, 381, ¶ 38 (2018). Under Rule 404(b), the court may admit evidence of a defendant's other crimes, wrongs, or acts to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The court must also apply Rule 403, which allows for the exclusion of evidence if its probative value is substantially outweighed by a danger of unfair prejudice. The court should consider "whether the probative value of the evidence is sufficient," "what restrictions to place in jury instructions on the usage of the evidence," and "whether the evidence can be narrowed or limited to protect both parties by minimizing its potential for unfair prejudice while preserving its probative value." *State v. Salazar*, 181 Ariz. 87, 91–92 (App. 1994). The evidence may be limited by substituting vaguer descriptions. *See State v. Acuna Valenzuela*, 245 Ariz. 197, 207, ¶ 13 (2018).

**¶13** Here, evidence that Wyffels had just been released from a month-long confinement, with no money or car and with plans to travel across the country, was relevant to show that he deliberately acted to obtain money and transportation through theft, and deliberately acted to avoid detection by killing the victim. *See, e.g.*, *State v. Libberton*, 141 Ariz. 132, 137–38 (1984) (evidence of defendant's escape from custody was admissible to show his motives for taking victim's wallet and car and then killing him); *State v. Ferguson*, 120 Ariz. 345, 346–47 (1978) ("[t]he exigencies" of in-custody defendant's escape from courthouse was admissible to show his motive for committing armed robberies in a parking lot). Also, evidence that he was released at a transit center in the Phoenix-area, the proximity of Adams' Sun City home to Wyffels' mother's home, and his intended

destination were all relevant to show how contact between the two could have occurred. And evidence that he was released wearing certain clothing was relevant to show his identity as Adams' companion in the video taken at the Prescott ATM.

¶14 The court minimized the evidence's potential prejudice by eliminating any reference to imprisonment, instead describing Wyffels' release as a "discharge[] from a . . . location" where he had "resided" without being "permitted" to leave. Further, the court twice instructed the jury that it could consider the evidence only to help determine Wyffels' motive, intent, plan, opportunity, or identity. The court acted well within its discretion by admitting evidence of Wyffels' release from incarceration with sanitizing language and a limiting instruction. *See Salazar*, 181 Ariz. at 91–92; *Acuna Valenzuela*, 245 Ariz. at 207, ¶ 13.

¶15 Though Wyffels points out that the jury in the second trial asked questions about where he was released from, the court declined to submit those questions to the witness. The jury was properly instructed to "attach no significance to the failure to ask a question," to "not guess why or what the answer might have been" to an unasked question, and to "not guess about any fact . . . [or] be influenced by sympathy or prejudice." The jury is presumed to have followed all instructions. *State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006). And on this record, nothing suggests that the jury did not follow the instructions. The evidence of Wyffels' guilt, including his self-incriminating statements to Mender and the physical evidence tying him to the crimes, was overwhelming. The admission of evidence that Wyffels was discharged from a Phoenix metropolitan area location where he resided and was not permitted to leave was not error.

## II.     Closing Argument

¶16 Wyffels next argues that he is entitled to relief because, in the second trial, the prosecutor vouched for the evidence in closing argument. A prosecutor engages in impermissible vouching by placing the prestige of the government behind the State's evidence. *State v. Vincent*, 159 Ariz. 418, 423 (1989). Because Wyffels did not object to the prosecutor's remarks at the trial, we review for fundamental error only. *See State v. Speer*, 221 Ariz. 449, 458, ¶ 42 (2009). Fundamental error is error that goes to the foundation of the case, takes away an essential defense right, and deprives the defendant of a fair trial. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). To prevail on fundamental error review, the defendant must also show prejudice. *Id.* at ¶ 20.

¶17        Wyffels points to the prosecutor's discussion of the murder verdict form, which gave the jury the option to find him guilty of premeditated murder, felony murder, or both. The prosecutor explained that "we need to know who thinks it's premeditated, felony, or both," and "[my co-counsel] and I believe that that is 12, 12, and 12 [votes for each]." We find no fundamental error or prejudice. The passing reference to what the prosecutors "believe[d]" simply stated the obvious without vouching for any specific witness or evidence. Thus, Wyffels has not established error, much less fundamental error or resulting prejudice.

**CONCLUSION**

¶18        We affirm Wyffels' convictions and sentences.

