NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANTHONY GREG GEHON, *Appellant.*

No. 1 CA-CR 15-0789
FILED 12-19-2017

Appeal from the Superior Court in Maricopa County
No. CR2010-007690-001 DT
The Honorable David B. Gass, Judge

**AFFIRMED IN PART; MODIFIED IN PART; REMANDED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

The Heath Law Firm, PLLC, Mesa
By Mark Heath
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Diane M. Johnsen joined.

**C R U Z**, Judge:

**¶1**  Anthony Greg Gehon appeals his convictions and sentences for assault, aggravated assault, pandering, child prostitution, sexual conduct with a minor, sexual conduct with a minor-special relationship, sexual exploitation of a minor, furnishing obscene or harmful items to a minor, and illegal control of an enterprise. For the following reasons, we affirm in part, modify in part, and remand in part.

## BACKGROUND[1]

**¶2**  On July 3, 2010, S.C., then sixteen years old, accompanied her uncle and custodial guardian, Gehon, to Snowflake to celebrate her grandmother's birthday (Gehon's mother). During the trip, S.C. noticed that Gehon was quite attentive to and physically affectionate with her then thirteen-year-old half-sister, M.E., who also attended her grandmother's birthday celebration. Indeed, at some point, S.C. overheard Gehon tell M.E. that he would rescue her from her father and stepmother. Viewing this conduct within the context of her own experiences with Gehon, S.C. began to fear that he might sexually abuse M.E.

**¶3**  On the morning of July 9, 2010, a few days after they had returned home to Phoenix, Gehon took S.C. to a medical facility to obtain some test results. When medical personnel disclosed that S.C. had tested positive for a sexually transmitted disease, Gehon became very angry, realizing S.C. would no longer be able to appear in pornographic films as he had planned.

**¶4**  Once they returned home from the medical appointment, Gehon provided S.C. with prescription drugs and then forced her to have vaginal intercourse. At some point following that assault, Gehon left the

---

[1]  We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

residence to run an errand and S.C. contacted her adult sister, M.B., and implored M.B. to call the police on her behalf and to protect M.E.

¶5          Shortly thereafter, police officers arrived at Gehon's residence. Once S.C. invited the officers inside, she told them that Gehon had been prostituting her since he became her custodial guardian. At that point, an officer transported S.C. to Childhelp for an interview. During her initial police interview, S.C. disclosed that she and Gehon had sexual intercourse that morning. She also gave officers: (1) two phones containing contact information, text messages, and pictures that evidenced prostitution; and (2) a ring that Gehon had given her to signify she had been sexually "trained."

¶6          Later that afternoon, police officers arrested Gehon and officers collected buccal and penile swabs from Gehon and from his clothing. Subsequent testing of the swabs revealed that DNA consistent with S.C.'s profile was present on Gehon's penis.

¶7          During the ensuing police investigation, officers interviewed numerous victims and executed multiple search warrants, seizing photographs, videos, hotel records, advertisements, emails, texts, computers, and sexually-oriented objects that substantiated S.C.'s claims. The State then charged Gehon with sixty counts of pandering (Counts 1-12, victim A.L.; Counts 13-17, 46, victim N.C.; Counts 18-27, 40, 42-45, 47, victim T.I.; Counts 48-54, victim J.M.; Counts 55-64, 69-72, victim D.S.; Counts 107-111, victim J.B.), thirty-nine counts of child prostitution (Counts 28-30, 39, 41, victim T.I.; Counts 73-106, victim S.C.), four counts of assault (Count 31, victim T.I.; Counts 66-68, victim D.S.), two counts of aggravated assault (Count 32, victim T.I.; Count 65, victim D.S.), four counts of sexual conduct with a minor (Counts 33-34, 36-37, victim T.I.), thirteen counts of sexual conduct with a minor-special relationship (Counts 113-125, victim S.C.), three counts of furnishing obscene or harmful items to a minor (Counts 35, 38, victim T.I.; Count 112, victim S.C.), four counts of sexual exploitation of a minor (Counts 126-129, victim S.C.), and one count of illegal control of an enterprise (Count 130).

¶8          At trial, numerous women testified that they had worked for Gehon as prostitutes. When asked about Gehon's role over the prostitution, the women consistently testified that Gehon: (1) established "house rules," "protocols," and rates for services; (2) created and published prostitution advertisements; (3) displayed pornography; (4) surveilled, and at times recorded, acts of prostitution; (5) provided them with "work" phones used exclusively to coordinate acts of prostitution; (6) supplied them condoms

3

and lubricants for acts of prostitution; and (7) demanded portions of their prostitution revenue. In addition, four women (S.C., T.I., J.M., and D.S.), two of whom were minors at the relevant times, testified that Gehon physically and sexually assaulted them.

¶9　　　　Taking the stand in his own defense, Gehon claimed he initially became involved with prostitution at the behest of FBI officers who approached him and asked him to work as their agent in an undercover sting operation. He acknowledged, however, that he continued to "help" women generate prostitution revenue after the alleged governmental operation ceased, and further admitted that his conduct constituted pandering, though he denied all other charges.

¶10　　　　Before the matter was submitted to a jury, the superior court dismissed twenty-five counts (Counts 6-8, 10, 16, 26, 29, 35-38, 42, 47, 49-51, 74, 79, 85, 88, 94, 103, 110, and 115-16), granting the State's motion to dismiss seventeen counts and partially granting Gehon's motion for judgment of acquittal. After a ninety-nine-day trial, the jury found Gehon guilty on all but four of the remaining charges, acquitting him of Counts 43, 66, 67, and 97. The superior court sentenced Gehon to concurrent and consecutive presumptive terms totaling over 490 years' imprisonment. Gehon timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

I.　　　Exclusion of Evidence Regarding a Victim's Prior Sexual History

¶11　　　　Gehon argues the superior court improperly precluded evidence regarding S.C.'s prior sexual history. Specifically, Gehon asserts he should have been permitted to impeach S.C. with her previous allegation that another man had raped her.

¶12　　　　Arizona's rape shield law, codified in A.R.S. § 13-1421, precludes "[e]vidence of specific instances of the victim's prior sexual conduct" unless the proponent demonstrates by clear and convincing evidence that the evidence: (1) is relevant, material, and more probative than prejudicial and, as relevant here; (2) pertains to "false allegations of sexual misconduct made by the victim against others." A.R.S. § 13-1421(A)(5), (B); *see also State ex rel. Montgomery v. Padilla*, 238 Ariz. 560, 564, ¶ 13 (App. 2015). Although a false accusation of sexual misconduct against another person by the alleged victim is an exception to the general ban of evidence, the court has considerable discretion in determining whether its prejudicial effect outweighs its probative value. *State v. Gilfillan*, 196 Ariz.

4

396, 404-05, ¶ 29 (App. 2000). In conjunction with A.R.S. § 13-1421(A), Arizona Rule of Evidence ("Rule") 608(b) grants the court discretion to exclude past acts of untruthfulness, weighing the value of such evidence against the possibility of unfair prejudice under Rule 403. *Id.* "Thus, the court's determination of the relevance and admissibility of the evidence will not be disturbed on appeal absent a clear abuse of the court's discretion." *Id.*

¶13         Early in the prosecution, Gehon moved to admit evidence that S.C. had "made false allegations of sexual misconduct . . . against another adult male[.]" Citing a 2008 Snowflake police report, Gehon argued S.C. falsely alleged that T.S. had raped her. Although the act between S.C. and T.S. was irrefutably non-consensual as defined by A.R.S. §§ 13-1405(A) and -1407(F), because S.C. was fourteen and T.S. eighteen at the time, Gehon argues the report contained a false allegation by S.C. about the manner in which the underlying sexual act occurred (forcefully and against S.C.'s wishes). Gehon argues the court should have conducted a hearing to determine whether S.C. lied about T.S. forcibly raping her.

¶14         The record reflects the court considered S.C.'s and T.S.'s accounts of events as recounted in the police report, which also contained other witness statements, and found the portion regarding the statements of the nature of the sexual encounter "not relevant, or if relevant," that any potential relevance was outweighed by the potential "confusion and unfair prejudice in the trial[.]"

¶15         In addition, the charges against Gehon, as they relate to S.C., were for child prostitution, sexual conduct with a minor-special relationship, furnishing obscene or harmful items to a minor, and sexual exploitation of a minor, and not for sexual assault. Given these charges, the manner in which any sexual misconduct by Gehon occurred was less relevant because Gehon was not accused of sexually abusing S.C. by force.[2] We hold the court did not abuse its discretion in excluding evidence related to the report of sexual activity between S.C. and T.S.

¶16         Gehon further argues that the superior court's denial of his motion to offer the evidence denied him the right to present a complete defense, asserting his ability to challenge S.C.'s veracity was severely

---

2         At trial, S.C.'s testimony that sexual conduct occurred between Gehon and her, while she was a minor and could not legally consent, was corroborated by several witnesses, thus dispelling the notion that S.C. was making a false allegation of sexual conduct with a minor against Gehon.

hampered. The statute provides safeguards to ensure that evidence of a victim's prior sexual activity may be admitted only when that evidence has probative value, particularly of credibility or untruthfulness, and alternative evidence tending to prove the issue is not reasonably available. *Gilfillan*, 196 Ariz. at 401-403, ¶¶ 17-23. Contrary to Gehon's contentions, the record reflects that defense counsel extensively cross-examined S.C. regarding her previous false statements to police and elicited numerous admissions that she had lied and provided inconsistent statements. *Cf. Olden v. Kentucky*, 488 U.S. 227 (1988) (holding the trial court erred when it excluded evidence of a rape victim's relationship with another man when evidence of that relationship would have provided strong evidence of her motive to lie about being raped and there was no alternative evidence that would have tended to show the same). Therefore, the superior court neither improperly excluded evidence nor denied Gehon his right to present a full defense.

II.     Admission of Other-Act Evidence

**¶17**        Gehon contends the superior court improperly admitted other-act evidence offered by the State. First, he challenges the evidentiary basis for the superior court's findings that he committed the other acts and had a propensity for aberrant sexual behavior. Second, even assuming the superior court properly found the other acts admissible, Gehon asserts the court failed to sanitize "inflammatory and irrelevant details" associated with the other acts, which he argues was necessary to prevent unfair prejudice. Finally, Gehon challenges the court's evidentiary ruling regarding several specific uncharged acts of physical and sexual abuse against victims D.S., T.I., and S.C.

**¶18**        "We review the admission of other-act evidence for an abuse of discretion." *State v. Yonkman*, 233 Ariz. 369, 373, ¶ 10 (App. 2013). Applying this standard of review, "we uphold a decision if there is any reasonable evidence in the record to sustain it." *State v. Butler*, 230 Ariz. 465, 472, ¶ 28 (App. 2012) (internal quotation omitted).

**¶19**        Rule 404 governs the admission of character and "other-act" evidence. In general, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Ariz. R. Evid. 404(b). An exception to this prohibition is outlined in Rule 404(c) however, which allows for the admission of such evidence when a defendant is charged with committing a sexual offense and the evidence is "relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit

the offense charged." Ariz. R. Evid. 404(c). Before admitting propensity evidence, the trial court must find: (1) sufficient evidence that the defendant committed the other act; (2) the other-act evidence provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged; and (3) the probative value of the other act is not substantially outweighed by a danger of unfair prejudice or confusion of the issues under Rule 403. *Id.* Rule 404(c)(1)(C) provides that, when deciding whether to admit such evidence to show propensity, the court shall consider, among other things, the remoteness of the other act, the similarity or dissimilarity of the other act, the frequency of the other act, the surrounding circumstances, and any relevant intervening events.

¶20        Rule 404 also allows evidence offered for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b). Under Rule 404(b), a court must find: (1) the evidence is relevant under Rule 402; (2) the evidence is offered for a proper purpose under Rule 404(b); (3) the probative value of the evidence is not substantially outweighed by the potential for unfair prejudice under Rule 403; and (4) there is clear and convincing evidence that the defendant committed the other act. *State v. Mott*, 187 Ariz. 536, 545-46 (1997); *State v. Terrazas*, 189 Ariz. 580, 584 (1997). Upon admission, and if requested, a trial court must provide an appropriate limiting instruction under Rule 105. *Mott*, 187 Ariz. at 546.

¶21        Several months before trial commenced, the State moved to admit evidence of numerous uncharged acts it alleged Gehon had committed. Citing Rule 404(b), the State asserted the other-act evidence was admissible to demonstrate: (1) Gehon's overall plan to transform the victims into sexual slaves; (2) the means he employed to achieve this goal, namely, "preparing" the victims "for a life of prostitution" by subjecting them to sexual, emotional, and physical abuse; and (3) his knowledge that some of the victims were minors. The State also argued the other-act evidence was admissible under Rule 404(c) because it showed Gehon's willingness to engage in sexual contact with minors and his sexual interest in "personally injuring or watching others injure the victims[.]"

¶22        During a ten-day evidentiary hearing held on the State's motion, the superior court heard testimony from a police detective, the State's expert, Gehon's expert, and three defense character witnesses. In addition, the court received audio and video recordings of the victims' interviews, as well as the interviews of several men who assisted Gehon

with sexually assaulting minor victims T.I. and S.C. After reviewing all the evidence, the superior court concluded several uncharged acts were admissible. Setting forth its reasoning in a detailed, forty-two-page minute entry, the superior court found: (1) the State's expert, Dr. Tina Garby, provided "credible" and "well-considered" testimony; (2) Gehon's expert, Dr. William Harnell, provided "less credible" and "far less thoughtful" testimony; and (3) the defense character witnesses, in many respects, did not dispute the victims' accounts of Gehon's conduct; rather, they provided a "more forgiving" interpretation of Gehon's actions and were willing to explain away his behavior. In addition, the court found the State had presented sufficient evidence for a jury to reasonably infer that: (1) the other acts were relevant to show "motive, intent, preparation, plan, knowledge, and absence of mistake or accident," and (2) Gehon has "a character trait giving rise to an aberrant sexual propensity to commit the crimes charged, specifically a character trait of aberrant sexual interest in sadomasochistic behaviors."

**¶23**        Citing *State v. Aguilar*, 209 Ariz. 40 (2004), Gehon contends insufficient evidence supported the superior court's finding that he committed the other acts. In making this argument, Gehon challenges the form of the State's evidence, not its substance. That is, he asserts the State failed to present in-court victim testimony as he argues *Aguilar* requires, and that, in the absence of such evidence, the superior court improperly relied on "police reports, transcripts, and recordings."

**¶24**        In *Aguilar*, the defendant was charged with sexually assaulting four women. 209 Ariz. at 41, ¶ 2. He acknowledged sexual contact with three of the women, "but claimed that each consented to the contact." *Id.* Before trial, the court denied Aguilar's motion to sever the charges, reasoning in part "that the evidence as to each victim would be admissible under [Rule] 404(c) as to the charges involving the other victims." *Id.* at 41, ¶¶ 3-4. On appeal, the supreme court noted that the trial court had "limited its review to the transcript of the grand jury proceedings, the pleadings, and the arguments of counsel at oral argument," none of which "contained testimony from the victims[.]" *Id.* at 49, ¶ 33. Because the only disputed issue was "whether the victims consented to the sexual contact," strictly a credibility determination, the supreme court held that absent testimony from the victims, the trial court "could not have" made the requisite finding that "the victims' accounts of the assaults were more credible than Aguilar's[.]" *Id.* at 50, ¶ 35. Therefore, the trial court's findings "were insufficient to support the cross-admission of the three allegations of sexual assault." *Id.*

¶25 Unlike the circumstances in *Aguilar*, here, consent was not an element or a defense to the charged crimes, other than the assault counts. More importantly, in this case, the superior court did not rely on second-hand accounts, but heard "actual recordings, some audio and some video," of the victims' statements recounting the charged crimes and the other acts. *See State v. LeBrun*, 222 Ariz. 183, 185, 187, ¶¶ 8, 12-13 (App. 2009) (concluding the trial court properly "relied on audio and video recordings of statements by the victims in concluding that clear and convincing evidence existed to support a finding that [the] defendant committed the offenses"). Contrary to Gehon's argument, the governing rules and relevant case law neither require live testimony nor categorically restrict the types of evidence a trial court may consider in determining the admissibility of other-act evidence. *Id.* at 187, ¶ 13. On these facts, the victims' recorded first-hand accounts were sufficient to support the court's finding that Gehon had committed the other acts. *See id.*

¶26 Applying *Aguilar*'s holding to the realm of expert testimony, Gehon also contends that Dr. Garby "inappropriate[ly]" relied solely "on documents" to assess the victims' credibility, and therefore the superior court's reliance on her opinion testimony was improper. Expert testimony supporting the admission of other-act evidence need not "be based on personal interviews"; however, an expert's review of a victim's statements may provide sufficient foundation for opinion testimony. *State v. Roscoe*, 184 Ariz. 484, 493 (1996). Equally important, and contrary to Gehon's argument, Dr. Garby expressly refused to opine on the victims' credibility. Instead, she presumed the victims' statements were true, and working from that assumption, determined the victims' accounts provided a sufficient basis to conclude Gehon had a propensity for aberrant sexual behavior.[3] As clearly reflected in the record, the superior court, not Dr. Garby, evaluated the victims' credibility, and given that independent determination, the court reasonably relied on Dr. Garby's "well-considered" opinion regarding Gehon's aberrant sexual propensity.

¶27 Although Dr. Garby and Dr. Harnell reached conflicting conclusions, their opinions differed primarily because of their underlying assumptions. Unlike Dr. Garby, Dr. Harnell assumed the victims' accounts were not credible because the victims were prostitutes and therefore "lie[d]

---

[3] When asked to explain her approach, Dr. Garby clarified that she did not necessarily assume "everything" the victims reported was "true." Instead, she reviewed the victims' accounts and accepted them as accurate insofar as they set forth consistent patterns of predictable behavior.

every day for a living." Dr. Harnell also disregarded recorded confessions from men who admitted assisting Gehon in sexually assaulting and exploiting the victims, explaining the men had been subjected to high-pressure police tactics and been permitted to enter unreasonably favorable plea agreements, which rendered their accounts of Gehon's conduct unreliable. By his own admission, Dr. Harnell based his opinion primarily on Gehon's self-reporting, but he conceded that had he accepted the victims' accounts as true, he likewise would have concluded that Gehon had a propensity for aberrant sexual behavior.[4]

¶28 Turning to Rule 403, Gehon contends the superior court exposed him to unfair prejudice by admitting the other-act evidence without redacting allegedly[5] unnecessary and inflammatory details. Relying primarily on *State v. Salazar*, 181 Ariz. 87 (App. 1994), Gehon argues it was incumbent on the court to limit the other-act evidence "only to its probative core."

¶29 When evaluating the probative value and attendant prejudice of other-act evidence, a trial court should consider "whether the evidence can be narrowed or limited to protect both parties[.]" *Id.* at 92. Because "[t]rial courts have broad discretion in balancing probative value against prejudice," we uphold a court's evidentiary ruling absent clear error. *Id.* at 91.

¶30 In *Salazar*, the defendant was charged with attempting to molest his thirteen-year-old niece. *Id.* at 88. At trial, the court permitted the State to call three witnesses who testified Salazar had previously raped

---

[4] Noting the defense character witnesses testified that they felt pressured during their interviews with one particular detective, Gehon argues the victims' recorded statements, which were also elicited during interviews with that detective, are "tainted." Notwithstanding their claims of "pressure," the defense witnesses expressly affirmed that they were truthful during their police interviews. As such, and contrary to Gehon's argument, there is no basis on this record to conclude the victims' police interview statements are, in any manner, compromised or otherwise unreliable.

[5] In making this argument, Gehon does not identify which details should have been sanitized or otherwise suggest how the other-act evidence should have been restricted.

them. *Id.* On appeal, this court concluded the evidence that Salazar previously raped two minor girls was admissible under Rule 404(c), but the details of those rapes that involved other criminal activity (assault, use of a deadly weapon, and repeated rapes) should have been precluded to limit the potential for unfair prejudice. *Id.* at 92. The court further held the evidence that Salazar raped an adult woman was "vastly dissimilar" to the act charged, and therefore should have been excluded in its entirety. *Id.*

¶31 Contrary to the circumstances in *Salazar*, here, the victims of the other acts are predominantly[6] the victims of the charged offenses. As a result, the other-act evidence was relevant not only to show Gehon's propensity for aberrant sexual behavior, but also to explain how he exerted control over the victims and compelled their compliance with respect to the charged offenses. That is, the other-act evidence demonstrated that Gehon methodically used humiliation, degradation, and pain to secure the victims' submission. *See State v. Schackart*, 153 Ariz. 422, 424 (App. 1987) (explaining other acts involving the victim of a charged offense are "relevant to the victim's state of mind" and lack of consent, and therefore not excluded by Rule 404). Thus, unlike *Salazar*, in which the details of the defendant's other acts served no purpose other than to "create overwhelming prejudice against [the] defendant," *Salazar*, 181 Ariz. at 92, in this case, the systematic abuse evidenced in the other acts helped prove Gehon's motive, plan, preparation, knowledge, and intent vis-a-vis the charged offenses. *See State v. Rojas*, 177 Ariz. 454, 460 (App. 1993) ("Generally, prior bad acts are admissible to show a plan, scheme, device or modus operandi[.]"). In addition, the other-act evidence directly challenged Gehon's defense that the victims sought to prostitute themselves, as well as his contention that he was physically unable to engage in sexual activity and therefore innocent of any sexual misconduct. *See State v. Hargrave*, 225 Ariz. 1, 9-10, ¶ 22 (2010) (holding other-act evidence that rebuts an asserted defense is relevant and admissible). In sum, to the extent the other-act evidence explicitly detailed uncharged abuse inflicted on the charged victims, it was probative rather

---

[6] The superior court determined four other acts related to uncharged victims were admissible in the State's case-in-chief: (1) Gehon "required [H.M.] to wear short [skirts] and no pants during their relationship," (2) Gehon masturbated in front of then seventeen-year-old L.C., (3) Gehon asked L.C. to be his girlfriend and invited her to watch pornography with him, and (4) Gehon sought to take custody of M.E. by filing a report with Child Protective Services. None of these other acts contains inflammatory details and each is limited to its "probative core." *See Salazar*, 181 Ariz. at 92.

than lurid, and the superior court did not clearly err by admitting the evidence in unredacted form.

¶32        Lastly, Gehon argues evidence of several specific other acts "should have [been] barred" as unfairly prejudicial. For simplicity, we distill the challenged other acts into two groups, addressing each in turn.

¶33        First, Gehon contends evidence that he repeatedly physically restrained D.S., once "whipped her with a riding crop," and twice invited other men to sexually assault her while he watched was inadmissible because the other acts were too remote in time to the charged offenses and insufficiently similar. Although Gehon correctly notes that these events occurred in 2005, approximately five years before most of the charged acts, they are not remote in time, by any measure, to the individual charges relating to D.S. Indeed, Counts 55-72, specific to D.S., occurred in 2004, 2005, 2007, and 2009. Likewise, Gehon's assertion that the other acts are dissimilar to the charged acts is not well-founded. In Counts 65-69, Gehon was charged with repeatedly assaulting D.S. by, among other things, physically restraining her and beating her with a riding crop. Although Gehon's character witnesses testified that D.S. encouraged such activity, there was controverting evidence regarding consent, and it was the superior court's province to evaluate credibility. Moreover, as found by the superior court, evidence that Gehon arranged for other men to sexually assault D.S. for his personal gratification was not substantially dissimilar to the charged acts, which included pandering and child prostitution.

¶34        Second, Gehon asserts evidence that he repeatedly arranged for other men to join him in sexually assaulting minor victims T.I. and S.C. was inadmissible because the other acts were simultaneously too similar to the charges of child prostitution and sexual conduct with a minor, creating juror confusion, and too dissimilar because, unlike the charged offenses, the other acts involved multiple men sexually assaulting the victims at the same time.[7] Consistent with the superior court's findings, the other-act evidence was substantially similar to the charges of child prostitution, sexual conduct with a minor, and sexual exploitation of a minor, and Gehon has not cited, and our review of the record has not revealed, any basis to conclude that it confused the jury.

_____

[7]        After the evidentiary hearing, Gehon conceded that the other-act evidence related to victims T.I. and S.C. was admissible.

¶35        Although Gehon argues the other acts involving D.S., T.I., and S.C. were not admissible for a non-propensity purpose, as explained above, *supra* ¶ 31, the evidence was admissible to prove Gehon's plan, preparation, motive, knowledge, and intent.  Ariz. R. Evid. 404(b).  Likewise, to the extent Gehon contends the superior court improperly admitted the other-act evidence in unredacted form, the details of the abuse were probative to issues regarding the victims' mental state and unwilling participation.  *See State v. Schurz*, 176 Ariz. 46, 52 (1993) (explaining "good relevant evidence" is by nature "adversely probative," but that alone does not render it "unfairly prejudicial").

¶36        Furthermore, the superior court properly instructed the jurors that they could not "convict [Gehon] of the crimes charged simply because [they found] that he committed these [other] acts, or that he had a character trait that predisposed him to commit the crimes charged."[8]  *See State v. Villalobos*, 225 Ariz. 74, 80, ¶ 20 (2010) (explaining a final instruction reminding the jury of the "limited purposes for which it could consider" other-acts evidence "appropriately mitigated" any prejudice).  The jury is presumed to have followed the superior court's instructions, and Gehon has not presented any evidence to overcome this presumption.  *See State v. LeBlanc*, 186 Ariz. 437, 439 (1996).  Indeed, the not-guilty verdicts on Counts 43, 66, 67, and 97 demonstrate that the jurors carefully considered the evidence and disproves Gehon's contention that the jury simply convicted him out of "anger."  *See State v. Stuard*, 176 Ariz. 589, 600 (1993) (rejecting the defendant's claim that evidence of other acts caused him unfair prejudice, noting the jury's acquittals on some counts showed that the

---

[8]      The court admitted evidence of prior sexual assaults under both Rule 404(b) and Rule 404(c) and gave corresponding final jury instructions. These instructions however, as traditionally given and as given in this case, are potentially inconsistent.  *See State v. Scott*, 243 Ariz. 183, 185 n.3, ¶ 17 (App. 2017) (affirming defendant's conviction where a past wrongful sexual act was admitted both to show a lack of mistake under Rule 404(b) and propensity under Rule 404(c) and the jury was given corresponding limiting instructions).  Gehon did not object to the instructions and does not contest on appeal the Rule 404(c) instruction the superior court gave here, and as such Gehon has waived any argument concerning the issue.  *See* Ariz. R. Crim. P. 31.13(c).  We accordingly do not address whether, in cases of sexual misconduct where evidence is properly admitted under Rule 404(c), the Rule 404(b) instruction, as it precludes use of evidence to show a character trait and action in conformity therewith, should be modified.

jurors carefully and properly considered the evidence). Therefore, the superior court did not abuse its discretion by admitting the other-act evidence.[9]

III.    Sufficiency of the Evidence

**¶37**        Gehon argues the State presented insufficient evidence to sustain his convictions on Counts 30, 32, 65, 90-93, 98-102, 104, and 130.

**¶38**        We review a claim of insufficient evidence *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Sufficient evidence may be direct or circumstantial and "is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Borquez*, 232 Ariz. 484, 487, ¶¶ 9, 11 (App. 2013) (internal quotation omitted). In evaluating the sufficiency of the evidence, we "do not reweigh the evidence to decide if [we] would reach the same conclusions as the trier of fact." *Id.* at 487, ¶ 9 (internal quotation omitted).

---

[9]        In his opening brief, Gehon makes a passing reference to A.R.S. § 13-1420 (2010) and asserts, without argument, that only other acts involving sexual conduct with a minor and sexual exploitation of a minor were admissible for propensity purposes. Because Gehon failed to present any argument to support this claim, we need not address it. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi) ("The appellant's brief shall include . . . [a]n argument which shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on."). Moreover, although A.R.S. § 13-1420(C) outlines numerous violations that qualify as admissible "sexual offenses" for propensity purposes, the statute expressly "does not limit the admission or consideration of evidence under any court rule," A.R.S. § 13-1420(B), and instead was adopted to "broaden[] the types of sexual offense cases in which other act evidence might be admissible." *Aguilar*, 209 Ariz. at 48, ¶ 26. Consistent with the purpose of the statute, other acts involving sadomasochistic behaviors, though not specifically enumerated in A.R.S. § 13-1420, are admissible for propensity purposes. *See State v. Williams*, 209 Ariz. 228, 237, ¶ 39 (App. 2004) (concluding "that the aberrant sexual propensity exception to the prohibition against character evidence, codified in Rule 404(c), encompasses the crimes of public sexual indecency and public sexual indecency to a minor," even though those offenses are not expressly recognized within A.R.S. § 13-1420).

A.     Counts 32 and 65

**¶39**     In Counts 32 (victim T.I.) and 65 (victim D.S.), the State alleged that Gehon committed aggravated assault by using a riding crop to knowingly touch the victims "with the intent to injure, insult or provoke[.]" A.R.S. §§ 13-1203(A)(3) (2010), -1204(A)(2) (Supp. 2016). On appeal, Gehon does not dispute that he struck the victims with a riding crop and therefore committed assault as proscribed by A.R.S. § 13-1203(A)(3). Instead, he challenges the State's assertion that a riding crop qualifies as a "dangerous instrument" for purposes of A.R.S. § 13-1204(A)(2), an allegation that elevated the offenses from simple assault to aggravated assault.[10]

**¶40**     As defined by statute, a "dangerous instrument" is "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." A.R.S. § 13-105(12) (Supp. 2016). "'Serious physical injury' includes physical injury that creates a reasonable risk of death, or that causes serious or permanent disfigurement, serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb." A.R.S. § 13-105(39). Because a riding crop is not inherently dangerous and is designed only "to inflict temporary pain" rather than "death or serious bodily harm," *Commonwealth v. Appleby*, 402 N.E.2d 1051, 1056 (Mass. 1980), the question is whether Gehon "used the object in such a way that it became . . ." a dangerous instrument. *State v. Gordon*, 161 Ariz. 308, 310 (1989).

**¶41**     At trial, D.S. testified that Gehon repeatedly whipped her with a riding crop. After Gehon inflicted these "punishments," he ordered D.S. to show her injuries to the other "girls" and explain that she had been disciplined for disobedience. Specific to Count 65, D.S. testified that she became pregnant in 2004 and Gehon ordered her to have an abortion. When she initially refused, Gehon told D.S. he would beat "it out of [her]." Gehon then whipped D.S. with a riding crop, inflicting such pain that she ultimately agreed to have an abortion. When asked about the lingering

---

[10]     Notwithstanding Gehon's argument on appeal, during closing argument, defense counsel conceded that a riding crop is a dangerous instrument: "I agree whole heartedly the riding crop qualifies as a dangerous instrument. It creates welts and cuts you if you use it right or if it hits you in the wrong way . . . . If, in fact, [Gehon] did hit those two, [T.I. and D.S.] with a riding crop, no matter which riding crop it was, if he did, in fact, hit them, then he is, in fact, guilty of aggravated assault."

effects of Gehon's "discipline," D.S. testified that she has permanent scars from being severely whipped.

¶42         Likewise, T.I. testified that Gehon "punished" her with a riding crop. With respect to Count 32, T.I. explained that she failed to obey one of Gehon's rules and he responded by putting a "ball gag" in her mouth and ordering J.M. to strike her with a riding crop. After J.M. hit T.I. twice, Gehon determined J.M. was unable to inflict sufficient pain, so he took the riding crop from her and used it to beat both victims. Unlike D.S., however, T.I. did not recall whether the "punishment" broke her skin, caused bleeding, or left marks.

¶43         Based on D.S.'s testimony, substantial evidence supports the jury's finding that Gehon used, attempted to use, or threatened to use a riding crop in a manner that rendered it a dangerous instrument with respect to Count 65. Specifically, Gehon threatened to inflict sufficient injury to cause a miscarriage, and D.S. suffered permanent scarring from the "discipline" he imposed. No similar evidence, however, supports the verdict for Count 32. T.I. did not testify that Gehon threatened her with injuries greater than those she actually sustained, and although D.S. testified that she saw welts and blood on T.I.'s body after Gehon whipped her, T.I. could not recall whether the "discipline" left any marks and did not claim any permanent scarring or disfigurement. Therefore, we modify Count 32 of the judgment to reflect Gehon's conviction for the necessarily included lesser offense of assault pursuant to A.R.S. § 13-1203(A)(3), and remand to the superior court for resentencing. Ariz. R. Crim. P. 31.17(d).

        B.        Counts 30, 90-93, 98-102, and 104

¶44         As charged in Counts 30 (victim T.I.), 90-93, 98-102, and 104 (victim S.C.), the State alleged that Gehon committed child prostitution by knowingly causing minors T.I. and S.C. to engage in "sexual conduct under a fee arrangement[.]" *See* A.R.S. §§ 13-3211(5) (2010); -3212(A)(1) (Supp. 2017). On appeal, Gehon does not deny that he *encouraged* the minor victims to engage in prostitution, but he argues the State failed to present substantial evidence that he *caused* them to perform sex acts for money. Contrary to Gehon's contention, however, the record is replete with evidence that he compelled T.I. and S.C. to engage in prostitution. Both victims testified that Gehon exerted control over them through systematic physical and sexual abuse. After securing their compliance, Gehon published prostitution advertisements for the victims, established specific protocols for their behavior with clients, monitored their performance, and demanded substantial portions of their prostitution earnings. Indeed,

16

when asked about the extent of Gehon's influence over the prostitution, each victim testified that he forced her to prostitute.

¶45        Aside from his overall argument of insufficient evidence of causation, Gehon raises specific issues regarding each challenged count. With respect to Count 30, Gehon argues there was no evidence that T.I. engaged in prostitution on the day alleged. As set forth in the charging document, the State differentiated Count 30 from other charges of child prostitution involving T.I. by linking it temporally to the riding crop incident underlying Count 32. Notwithstanding Gehon's argument, T.I. testified unequivocally that she worked as a prostitute on the day Gehon whipped her with a riding crop.

¶46        In a similar vein, Gehon asserts the State failed to present any evidence that S.C. engaged in prostitution with the clients identified in Counts 90-93. The record reflects that numerous clients submitted online "erotic reviews" regarding S.C. Within these "reviews," the clients detailed unique features of S.C.'s appearance, demeanor, services, performance, availability, and location. When questioned at trial, S.C. attested to the accuracy of the reviews corresponding to Counts 90-93, and confirmed that she engaged in sex acts with the reviewers as described therein for money.

¶47        For Counts 98-102[11] (victim S.C.), the State offered as exhibits several prostitution advertisements featuring S.C. Gehon does not dispute that he placed the ads on "the relevant dates in the indictment," but he asserts the advertisements, "alone," failed to prove that he knowingly caused S.C. to engage in prostitution on the dates alleged. The advertisements were not the only evidence supporting these charges, however. While explaining Gehon's use of online advertising, S.C. specifically testified that he required her to work as a prostitute on each day he posted an advertisement for her services. Therefore, sufficient evidence supports each challenged count of child prostitution.

        C.      Count 130

¶48        Finally, Gehon contends the State failed to present sufficient evidence to sustain his conviction for illegal control of an enterprise. As set forth in A.R.S. § 13-2312(A) (Supp. 2016) and charged in this case, a person

---

[11]     Although Gehon also refers to Count 104 in this portion of his argument, that charge did not involve a prostitution advertisement. Because Gehon has failed to present any argument relevant to Count 104, we do not address it. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi).

commits illegal control of an enterprise by knowingly, through racketeering or its proceeds, acquiring or maintaining control of an enterprise, by investment or otherwise. The indictment initially alleged that Gehon controlled "Capricious Escorts," but the named enterprise was later amended to "Anthony Gehon's Prostitution Business." Gehon does not contest that racketeering includes acts involving sexual exploitation of a minor, prostitution, and child prostitution. *See* A.R.S. § 13-2301(D)(4) (Supp. 2016). Nor does he dispute that he used prostitution revenue to pay rent, utilities, advertising fees, and other expenses related to his prostitution business. *See* A.R.S. § 13-3211(3) (defining "maintain" as including the payment of "utilities, rent, maintenance costs, or advertising costs, supervising activities or work schedules, and directing or furthering the aims of the enterprise"). Instead, he argues there is no evidence that any prostitution enterprise "existed apart from [himself]," and the State therefore failed to prove a requisite element of the offense.

**¶49** As defined by statute, an enterprise is "any corporation, partnership, association, labor union or other legal entity or any group of persons associated in fact although not a legal entity." A.R.S. § 13-2301(D)(2); *see also* A.R.S. § 13-3211(6) (2010) (defining a "prostitution enterprise" as "any corporation, partnership, association or other legal entity or any group of individuals associated in fact although not a legal entity engaged in providing prostitution services"). It is well-settled that "a legal entity must be distinct from the defendant for the entity to constitute an enterprise" under the relevant statutes. *See State v. Schwartz*, 188 Ariz. 313, 317 (App. 1996). Nonetheless, a sole proprietor's association with another individual in furtherance of a common "wholly unlawful" objective "can and does constitute an enterprise for purposes of A.R.S. § 13-2312." *Id.* at 317-18.

**¶50** At trial, several witnesses testified that D.N. recruited women for Gehon's prostitution business and frequently transported them to Gehon's residence. This testimony provided substantial evidence that Gehon associated with another person for the unlawful purpose of operating a prostitution business, and the State thereby presented sufficient evidence that Gehon controlled an illegal enterprise.[12]

---

[12] Accordingly, we need not decide (1) whether Gehon's association with various men to produce pornography was encompassed within the charge as set forth in the indictment or framed at trial, or (2) whether his relationship with any of the victims or other women who prostituted on his behalf satisfied the statutory requirements.

**CONCLUSION**

**¶51** For the foregoing reasons, we modify the judgment to reflect that Gehon's conviction in Count 32 is for assault and remand to the superior court for resentencing as to that count. We affirm Gehon's other convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA